197 So. 23

**CLARK v. STATE.**
**4 Div. 61.**

Supreme Court of Alabama.

April 13, 1940.

Rehearing Denied June 6, 1940.

Further Rehearing Denied June 27, 1940.

M. Sollie, of Ozark, M. I. Jackson, of Clayton, and Robert Bennett, of Ozark, for appellant.

Thos. S. Lawson, Atty.Gen., and Prime F. Osborn, Asst.Atty.Gen., for the State.

68

THOMAS, Justice.

The indictment, trial, conviction, verdict and judgment were for murder in' the first degree and the sentence was fixed at life imprisonment.

The state introduced testimony to show that defendant Clark and one Teal had conspired to commit the crime for which the former was convicted; that the two men were together the day preceding the night of the commission of the crime; that there were two sets of human tracks leading from the scene of the crime which corresponded. with shoes worn by Clark and Teal.

■ It is established in this jurisdiction that acts, conduct and declarations of a co-conspirator after consummation of the act and res gestæ of the conspiracy are irrelevant. The Court charged the jury not to consider the later statements by Teal uttered without the presence and hearing of defendant Clark. This action of the court was without reversible error. Alabama Digest, Criminal Law, ☜1169 (2), p. 289, et seq.; Wharton's Criminal Evidence, §§ 723, 724, p. 1216.

With this understanding of the nature of our well-established rules of evidence touching such confession of a co-conspirator or an accomplice, we are brought to a consideration of the several rulings of the trial court as to the mental status or sanity, vel non, of the witness and accomplice Teal. It will be remembered that Teal's statements were not given to the jury as mere confessions of Teal, but merely as the testimony of the defendant by his silence in the face of inculpatory statements in his presence and hearing and under circumstances calling upon him to speak in his own defense in the denial of such charge or admission. Teal's statements in defendant's hearing and his silence under the circumstances show that Teal's first confession was competent evidence against Clark, the· other conspirator. Milazzo v. State, 238 Ala. 241, 189 So. 907; Sam Underwood v. State, Ala.Sup., 193 So. 155; Lowman v. State, 161 Ala. 47, 50 So. 43; National Park Bank v. Louisville & N. R. Co., 199 Ala. 192, 74 So. 69; 6 Alabama Digest, Criminal Law, ☜516, p. 424.

■ The rule as to inadmissibility of such evidence, on two decisions from this court, is stated in Wharton's Criminal Evidence, Vol. 2, § 723, p. 1216, as follows: "The general rule regarding the inadmissibility of the confessions and admissions of guilt of co-conspirators and codefendants is usually stated by the courts with the proviso that such statements are inadmissible when made in the absence of the defendant. [Patterson v. State, 202 Ala. 65, 79 So. 459.] This is for the reason that a confession or admission of a co-conspirator or codefendant may be admissible if made in the presence of the accused and assented to by him, either expressly, impliedly, or tacitly by silence or conduct. [Bachelor v. State, 216 Ala. 356, 113 So. 67.] In such case then, the confession or admission of the co-conspirator or codefendant loses its inherent nature and becomes evidence which is merely incidental and coupled to the statement or conduct of the defendant in affirming and assenting to the truth of the statement made. It is really, then, not the confession or admission of a co-conspirator or codefendant which is admissible against the defendant in this situation, but his statements, action, or reaction thereto, and primarily a confession or admission of the de-

fendant is had by assent or adoption. Accordingly, such confessions or admissions which become admissible because of the words or behavior of the defendant are to be viewed in this aspect, and are so treated in this work in the chapter dealing with the confessions and admissions of the accused." [Chapter VIII, p. 1081; also p. 1089, § 656.] [Brackets supplied.]

 It is likewise well-established by authorities in this and other jurisdictions that: "It may be stated as a general rule that, when a statement is made in the presence and hearing of an accused, incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible on a criminal trial, as evidence of his acquiescence in its truth. A statement so made, of itself, would be objectionable as hearsay testimony, being a statement made at some time other than at a present trial, offered to prove the truth of the matter therein asserted, and based entirely on the credibility of a declarer not then before the court. However, as in the case of admissions generally, the statements herein considered are not offered as evidence of their truth merely because they were uttered; they are secondary in nature and are accepted in evidence as untainted by the hearsay stigma merely because they are a necessary predicate to the showing of the substantive evidence, the reaction of the accused thereto. The crystallization of the experience of men shows it to be contrary to their nature and habits to permit statements, tending to connect them with actions for which they may suffer punishment, to be made in their presence without objection or denial by them, unless they are repressed by the fact that the statement is true. Consequently, silence under accusation is some evidence from which the jury may infer that the accused acquiesced in the statement and admitted its truth. But silence or failure to deny, of itself, unaccompanied by the statement in the face of which the accused remained silent or which he failed to deny, cannot well be testified to so as to convey meaning. The witness might testify that an incriminating statement was made without stating what it consisted of, but such testimony would be objectionable as a mere conclusion. * * * Spencer v. State (1852) 20 Ala. 24; Martin v. State (1865) 39 Ala. 523; Matthews v. State (1876) 55 Ala. 187, 28 Am.Rep. 698; Williams v. State (1886) 81 Ala. 1, 1 So. 179, 60 Am. Rep. 133, 7 Am.Crim.Rep. 443; Kirby v. State (1889) 89 Ala. 63, 8 So. 110; Avery v. State [1900] 124 Ala. 20, 27 So. 505; Simmons v. State (1901) 129 Ala. 41, 29 So. 929; Davis v. State (1902) 131 Ala. 10, 31 So. 569; Jackson v. State (1910) 167 Ala. 77, 52 So. 730. * * *"

 With this understanding of our decisions, the statements made by Teal in the presence of the defendant, which were uncontradicted or denied by defendant when and under such circumstances as demonstrated that he acquiesced therein, were competent evidence. The trial court so ruled. The first of Teal's confessions, uttered in defendant's presence and hearing and under circumstances demanding that defendant speak, was not denied, *thus becoming competent evidence by reason of such conduct of the defendant*. The subsequent statements *to the same effect by Teal* (not a part of the res gestæ of the crime) uttered without the presence and hearing of defendant were not competent evidence against the other codefendant. The trial court having admitted both classes of statements by Teal, that within his presence and that without his presence, later instructed the jury not to consider statements in the nature of admissions or confessions made by Teal not in the presence of Clark. It may be observed that the two statements were of like import, touched the same physical facts verified by other witnesses, and such declarations, not made in Clark's presence and later excluded from the jury, introduced into the trial no error sufficient to reverse.

Such is the effect of the evidence as stated by Wharton's Criminal Evidence, Vol. 2, § 723, p. 1216, as hereinbefore set out. See, also, § 658, p. 1094, of the same Volume of the Eleventh Edition, which reads as follows: "Since it is not the statement of a third person which is admitted as substantive evidence, but only the fact of the accused's failure to deny it, it is generally held that the admissibility of such testimony is in no way affected by the fact that the incriminating statement was uttered by a person incompetent to testify as a witness. (Spencer v. State, 20 Ala. 24; Martin v. State, 39 Ala. 523). Hence, it is generally held that the inculpatory statement of one spouse in the presence of the other, which is not denied or contradicted by the latter, is admissible. (Richards v. State, 82 Wis. 172, 51 N.W. 652; Allen v. State, 20 Ala.App. 467, 103 So. 712, writ of certiorari denied in 212

Ala. 654, 103 So. 713; Thomasson v. State, 21 Ala.App. 562, 110 So. 563, writ of certiorari denied in 215 Ala. 315, 110 So. 564.) The same is true when the incriminating statement is made by an infant who is too young to testify, * * *."

The witness Teal was not shown to have been, at the time, admittedly, an insane person or mentally an irresponsible person. At and about the time of the homicide and thereafter up to the trial, his acts were those of a normal person and not of a non compos mentis. He is shown to have been an active co-confederate or co-conspirator in the commission of the crime. Hence his former history, or that of his family, presented no immediate issue of fact that would render the rulings of the trial court as' to this phase of the evidence infected with reversible error.

There was no error in sustaining objection to the question sought to be propounded to Tommie Decree as to the boy Thomas Lee Boykin. The witness was later permitted to indicate the location of his cell and that of defendant and that he did not see defendant give the boy a message to Teal.

The question sought to be propounded by the defendant to Mr. Mizell was in connection with a conversation with Howard Gullege and was if Gullege did not say, in substance, that Dwight Carpenter had many years before given that gun on which he cut his initials to him and they had that gun there at the Brown house and would surrender it and that he was going to get the gun. The court sustained the objection of the state. The defendant proposed to show that the witness would answer the question in the affirmative. The question sought to introduce irrelevant matter into the trial of defendant for the murder of Mr. Brown as to the conversation that took place between Gullege and Mizell.

The witness Windham testified for the defendant, and the defendant sought to show that the later declarations of Jeener Lee Teal indicated that Henry Clark was innocent of the charge of killing Brown, but that the Gulleges with Teal there did it. In view of the rules of evidence we have shown' to obtain as to Teal's statements in Clark's presence, there was no error in the court's sustaining the state's objection to such evidence.

There was no error in the action of the trial court in not letting the defendant, as a witness in his own behalf, say that on many occasions since the conversation with Jeener Lee Teal that he had told the witness that he had lied on him and what he (Teal) had said was not the truth. The defendant had testified that nothing Teal had said about it in the conversation was true; that he did not go with him to Brown's house or have anything to do with the homicide; that he had denied all the statements made by Teal "in so far as he had an opportunity to deny them from the beginning and I still do deny them."

The court is not shown to have abused its judicial discretion in allowing the state to introduce Howard Gullege as a witness, though he had not been summoned as a witness. He had been in the court room while witnesses were under the rule.

There was no reversible error in the ruling as to why said witness was selling his interest in the Brown land. The witness had testified:

"I say I had nothing to do with the killing of Ed Brown, not a thing. I am one of the heirs of his widow, got something out of the sale of the property. I sold my interest as an heir of Mrs. Brown, my aunt, to the man I did sell to, Lawrence Pitts. I got an interest in it. I did not know that upon the death of Jeener Lee's wife that property would go to the heirs of my aunt. I had 'not heard about it.

"Defendant then asked the witness this question:

"Well, why were you selling your interest in it?"

The witness could not give his undisclosed motives in the matter.

The right of cross-examination was not denied to defendant as to witness Skinner. He stated that he saw defendant and Teal together on Sunday preceding the finding of Brown's body; that he told the policeman at Blue Springs and did not tell the man for whom he worked.

The state's witness Creel had testified for the state that on the day of the homicide—Saturday afternoon—he saw defendant and Teal cross the bridge at Blue Springs going east; that "they were traveling afoot;" that he did not know

that Henry Clark's car was "crippled and out of use." There was no error in sustaining the state's objection to defendant's question: "'If that car had been lying out with its tires off and out of commission, for two months before that then you were mistaken, weren't you?'" The defendant excepted to the court's sustaining the objection to said question.

■ There was no error in allowing the state's witness Marshall Williams to testify as to defendant's admission of ownership of the shoes found in his home and as to their correspondence with and measurements of one of the tracks leading from the Brown house across the field to the swamp. He said to the question, "Tell how they compared?" that, "It was the same thing." He had testified in answer to the question by the court that he measured the defendant's shoes and the track in question and they corresponded and led along the way said by Teal to have been taken from the house of the deceased.

■ The witness Gamble testified for the defendant that they sold a car to Gullege a short while before Brown was killed; that it burned Saturday night, the night on which Brown was killed. The state's counsel asked on cross-examination if there was anything strange or unusual about that car burning. This was a proper cross-examination of the witness, who answered, "I did not notice anything unusual about it." It referred to the tendency of evidence connecting and that rebutting the fact of Gullege's participation in the murder.

We have carefully considered the oral charge of the court and many given charges that covered all phases of the evidence and submitted the necessary issues of fact to the jury. The many refused charges were either fully covered by the given charges and the oral instruction of the court, or were argumentative, or were defective in form, or were abstract, or unduly singled out a part of the evidence or were not predicated on a due consideration of all of the evidence. We find no error to reverse in the refusal of defendant's requested charges.

When the whole record and evidence are considered, we find no error committed by the court that substantially affected the trial to the prejudice of the defendant in his rights under the law.

We may here note that the state's motion to strike the bill of exceptions was hereinbefore overruled and is reported as Clark v. State, Ala.Sup., 193 So. 320.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

■ The rule adverted to from the case of Pope v. State, 168 Ala. 33, 53 So. 292, was not departed from in Oliver v. State, 232 Ala. 5, 166 So. 615, 617. Each case is judged by its particular facts. In the Oliver case, supra, the coroner was active in investigating the facts of the homicide and testified at the trial. Such official should not have been permitted by the sheriff to have had charge of the jury and "to remain with them during much of their deliberation." No such circumstances existed in the instant case. An officer is not rendered incompetent as a witness by the fact that he, as such officer, had the duty of caring for, attending to and being in charge of the jury. 70 Corpus Juris, § 245, p. 183.

■ It was declared in Stone v. State, 105 Ala. 60, 17 So. 114, that where it is shown in a criminal case that the defendant and his accomplice confessed in the presence of each other that they committed the crime together, *evidence tending to show a motive on the part of either to commit the crime is admissible against both.* The court, therefore, properly admitted the evidence tending to show a motive on the part of Teal as indicated by the witnesses Hardy, Pippin and Wilkerson. Moreover the court specifically excluded from the jury all statements, declarations or admissions of Teal not made in the presence of the defendant.

■ It is well established by this court that: "A majority of jurisdictions adhere to the rule that, where there is some evidence before the grand jury tending to connect the accused with the offense charged, the lack of evidence upon some essential element of the offense is not a ground for quashing the indictment. United States v. Reed, (1852) 2 Blatchf. 435, Fed.Cas. No. 16,134; Washington v.

State (1879) 63 Ala. 189; Jones v. State (1887) 81 Ala. 79, 1 So. 32; Mackey v. State (1914) 186 Ala. 23, 65 So. 330; Gunter v. State (1926) 21 Ala.App. 554, 110 So. 58; State v. Randolph (1909) 139 Mo.App. 314, 123 S.W. 61; State v. Bragg (1920) Mo.App., 220 S.W. 25; State v. Dayton (1850) 23 N.J.L. 49, 53 Am.Dec. 270." 59 A.L.R. 579.

This has been followed in many jurisdictions and the several earlier cases by this court are cited in the above excerpt from 59 A.L.R. 579.

In the more recent case of Ex parte State ex rel. Attorney General (Gore v. State), 217 Ala. 68, 69, 114 So. 794, 795, it is said:

"In Agee v. State, 117 Ala. 169, 23 So. 486, the court gave application to this rule, and sustained the trial court in refusing to allow the defendant to prove the testimony of the witness before the grand jury. The rule was again applied in Washington v. State, 63 Ala. 189, when it was attempted to show the testimony before the grand jury in order to establish that there was no legal evidence, but only hearsay, before that body, connecting the defendant with the crime charged. The refusal of the trial court to receive this testimony was approved, the court saying:

" 'In refusing to entertain the motion to strike the indictment from the file and quash it, the city court ruled in precise accordance with what was said by this court in Sparrenberger's Case [Sparrenberger v. State], 53 Ala. 481 (25 Am.Rep. 643). * * *'

"The Sparrenberger's Case was again approved in Bryant v. State, 79 Ala. 282, and the rule therein announced has not been departed from in this court. * * *"

In accordance with the above rule, the authorities are collected in 16 Alabama and Southern Digest, Indictment and Information, ☞ 137(4), p. 102. It is therein stated, among other things, as follows:

"Where an indictment is based on evidence of witnesses or legal documentary evidence before a grand jury, no question as to the sufficiency of the evidence can be raised on a motion to quash the indictment. Agee v. State, 117 Ala. 169, 23 So. 486.

"Where an investigation was made before the grand jury which returned the indictment, the sufficiency of the evidence adduced before that body cannot be raised on a motion to quash the indictment. Carl v. State, 125 Ala. 89, 28 So. 505.

"Where an indictment is based on evidence before a grand jury, no question as to its sufficiency can be raised on a motion to quash the indictment. Mackey v. State, 186 Ala. 23, 65 So. 330."

See also Hall v. State, 134 Ala. 90, 111, 113, 114, 32 So. 750; Note, 28 L.R.A. 325, 326.

One ground of the motion to quash is based upon the fact that "hearsay" testimony was considered by the Grand Jury. This question was held to be improper in United States v. Beadon, 2 Cir., 49 F.2d 164, certiorari denied in Beadon v. United States, 284 U.S. 625, 52 S.Ct. 11, 76 L.Ed. 533. The subject has been discussed by Joyce on Indictments, paragraph 238; 31 C.J. § 374, p. 801. This court has not departed from the rule declared in Sparrenberger v. State, supra; Franklin v. State, 233 Ala. 203, 171 So. 245.

The rulings of the trial court are based on the averments in the motion and plea as to the effect of the evidence before the Grand Jury. No error was committed under the State or Federal Constitutions as to the sustaining of demurrer to the motion to quash and to the plea containing like averments.

The grounds of the motion to quash and the plea go to the sufficiency of the evidence before the Grand Jury that returned the indictment. All of the authorities agree that such grounds are not well taken.

It results that the application for rehearing should be, and is, overruled and the judgment of the circuit court affirmed. It is so ordered.

Application for rehearing overruled. Affirmed.

All the Justices concur.